UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MILTON D. RICKMAN,

       Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

       Defendants.

Case No. 1:06-cv-52

Honorable Gordon J. Quist

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), "no action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because Plaintiff has failed to demonstrate exhaustion of available administrative remedies, the Court will dismiss his complaint without prejudice.

### Discussion

    I.     Factual allegations

Plaintiff is presently incarcerated at Carson City Correctional Facility. In his *pro se* complaint, he sues the Michigan Department of Corrections (MDOC)[1], Deputy Warden Tony

---

[1] Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections because it is immune under the Eleventh Amendment from suit in the federal courts. *See Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000); *Erdman v. Michigan Dep't of Corr.*, No. 94-2109, 1995 WL 150341, at *1 (6th Cir. Apr. 5, 1995); *Cullens v. Bemis*, No. 92-1582, 1992 WL 337688, at *1 (6th Cir. Nov. 18, 1992); *Adams v. Michigan Dep't of Corr.*, No. 86-1803, 1987 WL 36006, at *1 (6th Cir. May 7, 1987).

Trierweiler and Inspector Mark Christenson of the Carson City Correctional Facility (DRF), and Detective Kenneth Shutter of the Warren Police Department.

Plaintiff claims that Defendants wrongfully extracted his DNA from a buccal (inside the cheek) swab when he had already provided several DNA samples to the Wayne County Sheriff's Department on December 5, 2003. On September 27, 2004, Inspector Christenson escorted Plaintiff to meet with Detective Shutter. At that meeting, Shutter requested a buccal swab from Plaintiff as part of an ongoing criminal investigation. Plaintiff, however, refused to consent to the swab because he had already submitted several DNA samples in 2003. Plaintiff argued that Shutter could access his previous DNA sample on the Michigan State Police DNA database. As a result, Plaintiff was ordered to wait outside.

Shortly thereafter, Inspector Christenson escorted Plaintiff into an office with Defendants Trierweiler and Shutter. Deputy Warden Trierweiler issued a direct order to Plaintiff to submit to the buccal swab or be placed in "indefinite disciplinary detention." Again, Plaintiff refused to consent and insisted that Defendants should check his DNA samples on the Michigan State Police DNA database. Trierweiler replied "we don't have to." Pl.'s Compl. at 8. When Trierweiler instructed Christenson to "lock [Plaintiff's] black ass up indefinitely", Christenson handcuffed Plaintiff. *Id.* Defendants then "violently" threw Plaintiff to the floor, and forcibly opened his mouth. *Id.* at 9.

Plaintiff argues that under the DNA Identification Profiling Act, MICH. COMP. LAWS § 28.171 *et seq.*, the Michigan State Police permanently retains the DNA identification profile of an individual convicted of a felony or an attempted felony. Plaintiff believes that the Wayne County Sheriff's Department sent his 2003 DNA sample to the Michigan State Police for inclusion in the

Michigan DNA database. Further, Plaintiff states that he is not required to provide another DNA sample under MICH. COMP. LAWS § 750.520m(2), which provides:

> [I]f at the time . . . [a] person is convicted of or found responsible for . . . [a] violation [of an enumerated statute,] the investigating law enforcement agency or the department of state police already has a sample from the person that meets the requirements of the DNA identification profiling act, . . . [then] the person is not required to provide another sample . . . .

Plaintiff argues that the forced extraction of his DNA by Defendants violated his rights under the Fourth Amendment, Fifth Amendment, and the Fourteenth Amendment. Plaintiff also alleges claims of racial discrimination and intentional infliction of emotional distress against Defendants in his complaint.

For relief, Plaintiff requests declaratory and injunctive relief, and monetary damages and costs.

## II.  Lack of exhaustion of available administrative remedies

Plaintiff has failed sufficiently to allege and show exhaustion of available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. A district court must enforce the exhaustion requirement *sua sponte*. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his

complaint, if the decision is available.[2]  *Brown*, 139 F.3d at 1104.  In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the Court may determine what claims, if any, have been exhausted.  *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000).  In addition, a prisoner must specifically mention the involved parties in the grievance to alert the prison officials to the problems so that the prison has a chance to address the claims before they reach federal court.  *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Thomas v. Woolum*, 337 F.3d 720, 735 (6th Cir. 2003); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir. Sept. 27, 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance.").

The forced extraction of Plaintiff's DNA is the type of claim that may be grieved through the three-step prison grievance process.  *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy or procedure or unsatisfactory conditions of confinement") (effective 12/19/03).  In his complaint, Plaintiff states that he exhausted his administrative remedies by filing grievances "sufficient to afford the DRF and MDOC administrative prison officials a chance to address the claims against its personnel . . . , and by following them through all three (3) administrative steps of the established MDOC grievance procedures."  Pl.'s Compl. at 5.  Plaintiff also requests this Court to see Grievance No. DRF-04-10-01560-18a attached to his complaint as Exhibit A.  *Id.*  Plaintiff, however, failed to attach the Step I, Step II and Step III grievances to his complaint.  Plaintiff's allegations therefore are too conclusory to demonstrate that he has exhausted his available administrative remedies.  As the Sixth Circuit previously noted, a

---

[2]To assist prisoners in meeting this requirement, this Court advises prisoners to attach copies of documents evidencing exhaustion in its form complaint.  The form complaint, which is required by local rule, is disseminated to all the prisons.  *See* W.D. MICH. LCIVR 5.6(a).  Plaintiff has chosen to forego use of the form complaint in this action.

- 4 -

prisoner must describe with specificity the administrative proceeding and its outcome so that the Court may determine what claims, if any, have been exhausted. *Knuckles El*, 215 F.3d at 642. By failing to describe with specificity the Defendants and claims that he exhausted in his grievance, Plaintiff fails to demonstrate exhaustion of his available administrative remedies.

Defendant Shutter is employed by the Warren Police Department rather than the Michigan Department of Corrections. Plaintiff therefore cannot exhaust his claims against Defendant Shutter through the MDOC three-step grievance process. As Plaintiff does not have an available administrative remedy to satisfy the exhaustion requirement against Defendant Shutter, his claims against Defendant Shutter are exhausted. Plaintiff's action, however, must still be dismissed for lack of total exhaustion because it contains both exhausted and unexhausted claims. *Jones Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005).

It is not clear whether Plaintiff may still grieve his claims. Under the policy of the prison, complaints must be resolved expeditiously, and complaints may be rejected as untimely. *See* Policy Directive 03.02.130, ¶ G(4). The Sixth Circuit held that an inmate cannot simply claim that "he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) (citing *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1997)). However, even if the MDOC considers a subsequent grievance to be untimely, a prisoner who has presented a grievance through one complete round of the prison process will nevertheless be deemed to have exhausted available administrative remedies as required by 42 U.S.C. § 1997e(a). *See Thomas*, 337 F.3d at 733.

Because the exhaustion requirement is no longer discretionary, but is mandatory, the Court does not have the discretion to provide a continuance in the absence of exhaustion. *See Wright*, 111 F.3d at 417. Rather, dismissal of this action without prejudice is appropriate when a

prisoner has failed to show that he exhausted available administrative remedies. *See Freeman*, 196 F.3d at 645; *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997). Dismissal for failing to exhaust available administrative remedies does not relieve a plaintiff from payment of the civil action filing fee. *Smeltzer v. Hook*, 235 F. Supp. 2d 736, 746 (W.D. Mich. 2002) (citing *Omar v. Lesza*, No. 97 C 5817, 1997 WL 534361, at *1 (N.D. Ill. Aug. 26, 1997)). Accordingly, the Court will dismiss his action without prejudice.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court will dismiss Plaintiff's action without prejudice because he has failed to show exhaustion as required by 42 U.S.C. § 1997e(a).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

A Judgment consistent with this Opinion will be entered.


Dated: February 17, 2006            /s/ Gordon J. Quist            
                                    GORDON J. QUIST
                                    UNITED STATES DISTRICT JUDGE